795 So.2d 1034 (2001)
In the Interest of J.M.M., a child.
J.M., Appellant,
v.
State of Florida, Department of Children and Family Services, Appellee.
No. 2D01-250.
District Court of Appeal of Florida, Second District.
September 7, 2001.
*1035 Jeffrey A. King, Sarasota, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Linda Davis Tuck, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
J.M., the mother of J.M.M., appeals a final judgment terminating her parental rights to her daughter. Because the record fails to support certain factual findings and because the trial court improperly considered other evidence, we reverse.
The child, J.M.M., was born on September 8, 2000. On October 2, 2000, the Department of Children and Family Services filed a petition to terminate the parental rights of J.M. to her child. In support of the petition, the Department alleged that in the past J.M.'s parental rights had been terminated to two of her children, that she had voluntarily surrendered her rights to a third child, and that it would be in the child's manifest best interest if the parental rights were terminated.
Following a trial on January 4, 2001, the court granted the petition and terminated J.M.'s parental rights. We review the final judgment of termination and hold that several findings of fact upon which the trial court relied are not supported by the record.
First, the final judgment recites that the court-appointed guardian ad litem believed that the child's best interest would be served by the termination of J.M.'s parental rights. Unfortunately, as the record fails to contain either the testimony of the guardian or a guardian's report, no evidence supports this finding.
Next, the trial court found that the child had formed a significant relationship with a parental substitute and had entered into a permanent family relationship in "his" [sic] current placement. Unfortunately, no record evidence sets forth the nature of the child's placement or the extent of the child's bonding with the family. *1036 This is understandable as, at the time of trial, the child was but four months old and could not discuss the extent of her feelings. Furthermore, only weeks before the trial the Department was forced to find a new placement for the child when the couple with whom she had originally resided began to have marital problems. Nonetheless, there was no testimony from the current foster family about these important concerns although there was evidence that the foster family was willing to adopt the child. Expression of this undeniably laudable purpose does not, however, prove that the child has entered into a "significant relationship with a parental substitute."
The court also found that no bond or love existed between the parent and the child, but the Department's caseworker testified to the contrary, indicating that J.M. visited regularly with her daughter and displayed great rapport with her. Again, the court's finding is not supported by evidence and here is actually refuted by the record.
Finally, the court noted that J.M. intended to reside with an arrestee. After the close of evidence the court undertook a criminal records search and discovered that this individual had been charged with sale of cocaine. Because the information was not admitted during the trial and was considered later by the court, J.M. was denied her due process right to a fair hearing, including the opportunity to cross-examine. The trial court should have confined its consideration to the evidence adduced at trial in reaching its decision.
We conclude, as this court did in In the Interest of C.W.W., 788 So.2d 1020 (Fla. 2d DCA 2001), that the trial court's judgment was not based upon record evidence. Therefore, we reverse and remand for a new hearing.
NORTHCUTT, A.C.J., and STRINGER, J., Concur.